**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KARINA MORENO, on behalf of herself and other plaintiffs similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 C 1833 |
| PROGISTICS DISTRIBUTION, INC., | ) ) | Judge Thomas M. Durkin |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Karina Moreno ("Moreno) filed a collective action lawsuit against defendant Progistics Distribution, Inc. ("Progistics") alleging gender-based pay discrimination and failure to pay overtime wages in violation of state and federal wage laws. R. 1. Currently before the Court is Progistics's motion to compel arbitration and stay proceedings. R. 19. For the following reasons, the Court grants Progistics's motion.

**Background**

Progistics employed Moreno, an Illinois resident, as a semi-truck driver delivering goods in Illinois from November 2016 until she resigned in March 2018. R. 1 at 3-4; R. 19-1 ¶ 3. On November 14, 2016, Moreno signed a document titled "Employee Acknowledgment of Receipt" ("Acknowledgment"). R. 19-1 at 8. The first paragraph of the Acknowledgement states:

> This is to acknowledge that I have received a copy of the Employee
> Handbook. This Handbook sets forth the terms and conditions of my

1

employment as well as the rights, duties, responsibilities, and obligations of my employment with Progistics Distribution Inc. I understand and agree that it is my responsibility to read and familiarize myself with all of the provisions of the Handbook. I further understand and agree that I am bound by the provisions of the Handbook, particularly the provision relating to the mandatory, binding arbitration of any employment related dispute. I understand that by agreeing to arbitration, I am waiving the right to a trial by jury of the matters covered by the 'Arbitration' provisions of the Handbook.

R. 19-1 at 8.

Progistics's Vice President of Human Resources Lisa Smith explains that the Acknowledgment Moreno signed was "located at the end of" Progistics's October 2015 Employee Handbook for Illinois ("2015 Illinois Handbook"). R. 19-1 ¶ 5. Section 1.5 of the 2015 Illinois Handbook is titled "Arbitration Policy." R. 22-3 at 6. It states:

In consideration of your employment with Progistics Distribution, its promise to arbitrate all employment-related disputes, and your receipt of the compensation, pay raises, and other benefits paid to you by the company, at present and in the future, you agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, or benefit plan of the company, in their capacity as such or otherwise), whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from your employment with Progistics Distribution, or the termination of your employment with the company, including any breach of this agreement, shall be subject to binding arbitration under the terms and conditions set forth in the at-will employment, confidential information, invention assignment, and arbitration agreement between you and Progistics Distribution (or such other confidentiality agreement between you and the company, each the "confidentiality agreement"). In the event the confidentiality agreement between you and the company does not contain an arbitration provision, then you nevertheless agree to arbitrate any and all claims set forth above in a neutral, mutually agreeable forum according to the applicable minimum standards for arbitration.

*Id.* Moreno did not enter into any separate confidentiality agreement with Progistics regarding arbitration. R. 19-1 ¶ 5.

2

The 2015 Illinois Handbook also provides the following disclaimer in Section 1.2:

> The Company reserves the right to modify, rescind, delete, or add to the provisions of this Handbook from time to time in its sole and absolute discretion. This Employee Handbook is not a binding contract between the Company and its employees, nor is it intended to alter the at-will employment relationship between the Company and its employees. The Company reserves the right to interpret the policies in this Handbook and to deviate from them when, in its discretion, it determines it is appropriate.

R. 22-3 at 5.

In an affidavit filed in support of her opposition to arbitration, Moreno disputes receiving a copy of the 2015 Illinois Handbook. R. 22-1 ¶¶ 5-6. Another Progistics employee, Christian Moreno, also filed an affidavit in support of Moreno's opposition stating that he was told by general manager Ralph Scumacci that there was no employee handbook for Illinois. R. 22-4 ¶ 2. Christian Moreno states that he was given a May 2016 Handbook instead for "California locations only" ("2016 California Handbook") that did not contain an arbitration policy. R. 22-4 ¶ 2; R. 22-5.

Smith responds to these assertions in her own affidavit explaining that the 2015 Illinois Handbook "was in effect at the location where Plaintiff and Christian Moreno were employed," and that both of them would have received it when they began their employment in November 2015. R. 24-1 ¶¶ 4-5; R. 19-1 ¶¶ 4-5. Smith further states that "Site Managers such as Mr. Scumacci are typically not able to advise Progistics's employees concerning the applicability of employee handbooks" because they "are employed by a different entity and, as such, their employment is subject to a different employee handbook." R. 24-1 ¶ 4. And Smith explains that

"[a]fter Progistics entered into a relationship with Avitus Group, which was after the issuance of the October 1, 2015 Employee Handbook and after Plaintiff began her employment, any employee handbooks issued in conjunction with Avitus Group contained an acknowledgment of receipt form that was different from" the Acknowledgment signed by Moreno. *Id.* ¶ 6.

On March 2, 2018, Progistics distributed by email to Moreno and other employees an updated Employee Handbook, which does not specify that it applies to any particular state ("2018 Handbook"). R. 22-1 ¶¶ 2-3. The 2018 Handbook states that "[a]ll previously issued Employee Handbooks and any inconsistent policy statements or memoranda are superseded." *Id.* ¶ 3. The 2018 Handbook does not contain an arbitration policy section or otherwise address arbitration. Smith explains that "[a]t the time of the issuance of the 2018 Progistics Distribution Employee Handbook on March 2, 2018, Progistics no longer included reference to its arbitration program in its employee handbooks. However, Progistics maintained its pre-existing arbitration program with its employees and continued to enter into arbitration agreements with its employees separate from that handbook." R. 24-1 ¶ 2. Moreno resigned two weeks after the 2018 Handbook was issued.

Moreno filed this lawsuit on March 13, 2018. R. 1. Progistics's counsel subsequently provided Moreno's counsel with the Acknowledgement and 2015 Illinois Handbook and requested that Moreno stipulate to arbitration. R. 19-2 ¶¶ 3-8. Progistics offered to submit the dispute to the American Arbitration Association ("AAA") under the AAA's Employment Arbitration Rules and offered to pay filing and

other arbitration fees. *Id.* ¶ 12. After Moreno's counsel declined to stipulate to arbitration (*id.* ¶ 11), Progistics moved to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (2012). R. 19.

### Standard

Motions to compel arbitration are reviewed under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The "opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

The FAA "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). "Under the [FAA], arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). Thus, "the party seeking arbitration is entitled to the benefit of the doubt," and "where any ambiguity as to the scope of the clause exists, [the court]

will construe it in favor of the party seeking arbitration." *IBEW Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).

## Analysis

### I.    Written Agreement to Arbitrate

The first element required for this Court to compel arbitration under the FAA is a written agreement to arbitrate. *Zurich*, 417 F.3d at 687. "[T]he court must decide whether a contract exists before it decides whether to stay an action and order arbitration." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). "'In determining whether a valid agreement arose between the parties, [the] court . . . look[s] to the state law that ordinarily governs the formation of contracts.'" *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999) (*quoting Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 367 (7th Cir. 1999)). Here, as both parties agree, Illinois law applies because Moreno's employment took place in Illinois. *See id.* (applying Wisconsin law where employment took place in Wisconsin).

"In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). The Illinois Supreme Court in *Melena* made clear that an employer does not need to undertake an overly formalistic process to satisfy these elements and create an agreement to arbitrate. The plaintiff in *Melena* received a handbook regarding the defendant's new arbitration policy in the mail. *Id.* at 102. She subsequently signed an acknowledgment of receipt of the handbook, which included disclaimers that "the company reserves the right to modify this handbook" and that "this handbook is not

a contract of employment." *Id.* The *Melena* Court held that the employer's "mailing of materials related to the [arbitration] program to its employees, constitutes [the employer's] 'offer.'" *Id.* And "by continuing her employment . . . [a] plaintiff both accept[s] the offer [to arbitrate] and provide[s] the necessary consideration." *Id.* This was true despite the fact that the employer offered the agreement "on a 'take it or leave it basis" and "gave [the employee] little choice in the matter." *Id.*

As shown by *Melena*, Moreno's mere continuation of her employment with Progistics after being notified of an arbitration program constitutes acceptance and consideration under Illinois law. And although Moreno disputes receiving the 2015 Illinois Handbook, the Acknowledgment she undisputedly received and signed constitutes both an offer and an acceptance of arbitration. It states that Moreno reviewed the Handbook and its provisions regarding "mandatory, binding arbitration of any employment related dispute," and "that by agreeing to arbitration, [she was] waiving the right to a trial by jury of the matters covered by the 'Arbitration' provisions of the Handbook." R. 19-1 at 8.

Moreno nevertheless argues that that there was no agreement to arbitrate because: (1) Section 1.2 of the Handbook disclaims contractual intent and makes the contract illusory; (2) the lack of detail in the arbitration policy renders it vague and unconscionable; (3) the 2018 Handbook superseded the 2015 Illinois Handbook's arbitration policy; and (4) genuine issues of material fact that preclude compelling arbitration. The Court considers each of Moreno's arguments in turn.

A.     **The Disclaimers**

Moreno's first set of arguments focuses on Section 1.2 of the 2015 Illinois Handbook. That section: (1) states that the Handbook is "not a binding contract" ("the non-binding disclaimer"); and (2) gives Progistics "the right to modify, rescind, delete, or add to the provisions of this Handbook from time to time in its sole and absolute discretion" (the "non-mutual-modification disclaimer"). R. 22-3 at 5. Moreno argues that these disclaimers mean that no contract was formed, and therefore make any agreement to arbitrate in the "Arbitration Policy" section of the Handbook (Section 1.5) illusory. The Court disagrees for several reasons.

First and foremost, regardless of the effect of the disclaimers on the formation of a contract through the Handbook, Moreno signed a separate Acknowledgement unequivocally stating: "I . . . *agree that I am bound* by the provisions of the Handbook, particularly the provision relating to the *mandatory, binding arbitration* of any employment related dispute. I understand that by *agreeing to arbitration*, I am *waiving the right to a trial by jury* of the matters covered by the 'Arbitration' provisions of the Handbook." R. 19-1 at 8 (emphasis added). This provision "on its face requires arbitration." *See, e.g.*, *Diggs v. Linebarger, Groggan Blair & Sampson LLP*, 2013 WL 5737306, at *2 (N.D. Ill. Oct. 22, 2013)[1]; *see also, e.g.*, *Medina v.*

---

[1]     Although their titles and precise text differ, both the Acknowledgment in this case and the agreement in *Diggs* are signed, separate one-page documents agreeing to the Employee Handbook terms and containing unequivocal language evidencing an agreement to arbitrate. *See Diggs*, 2013 WL 5737306, at *1 ("Arbitration of Disputes Agreement" stating: "I have read the 'Arbitration of Disputes' provision in this Handbook. I understand its provisions and I specifically agree to its terms. This

*Hispanic Broadcasting Corp.*, 2002 WL 389628, at \*1-5 (N.D. Ill. March 12, 2002) (compelling arbitration based on employee's signing of "Receipt and Acknowledgment of Employee Handbook" that "agree[d] to submit all Disputes (as defined by the Company's ADR policy, which I have received . . . to binding arbitration").

To be sure, Moreno's promises in the Acknowledgment had to be supported by consideration to avoid rendering them illusory. *See Martinez v. Utilimap Corp.*, 2015 WL 3932151, at \*5 (S.D. Ill. June 25, 2015) (whether a contract is illusory is "essentially, to use the[ ] more traditional contract terms, a dispute over whether there was sufficient consideration for a contract to arbitrate to have been formed.") (citing *W.E. Erickson Constr., Inc. v. Chicago Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. Ct. 1994)). "[C]onsideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997).

Moreno argues that Progistics offered nothing in exchange for Moreno's promises to arbitrate because the disclaimers in Section 1.2 of the 2015 Illinois Handbook allowed Progistics to free itself from the entire Handbook, including Progistics's mutual commitment to arbitrate in the "Arbitration Policy" section of the

---

means that by signing below, I agree to arbitrate, rather than litigate in court, any and all claims arising out of or relating to my employment . . . .") *with* R. 19-1 at 8 ("Acknowledgment of Receipt" stating: "This is to acknowledge that I have received a copy of the Employee Handbook. . . . I understand and agree that I am bound by the provisions of the Handbook, particularly the provision relating to the mandatory, binding arbitration of any employment related dispute. I understand that by agreeing to arbitration, I am waiving the right to a trial by jury of the matters covered by the 'Arbitration' provisions of the Handbook.").

Handbook, at any time. As explained above, however, Moreno's mere continued employment constituted consideration on the part of Progistics for her promises in the Acknowledgement to arbitrate under Illinois law. *See, e.g.*, *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 353 (Ill. 2012) (under Illinois law, a plaintiff's "promise to arbitrate, even if not met with a reciprocal promise to arbitrate by defendant," is enforceable if "supported by consideration"); *Melena*, 847 N.E.2d at 109 ("under Illinois law, continued employment is sufficient consideration"); *Martinez*, 2015 WL 3932151, at *6 (under Illinois law, "[a] mutual promise to arbitrate . . . is not required for an enforceable arbitration agreement if the agreement is supported by other consideration, and . . . that other consideration can be continued at-will employment"); *Chatman v. Pizza Hut, Inc.*, 2013 WL 2285804, at *5 (N.D. Ill. May 23, 2013) (even if non-mutual-modification disclaimer negated employer's promise to arbitrate, "there still would be ample consideration to support the arbitration agreement" under Illinois law in the form of "continued employment").

This principle distinguishes numerous cases on which Moreno relies that were decided under Indiana and other states' laws. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1132 (7th Cir. 1997) (explaining that under Indiana law, "the mere fact of continued employment does not constitute consideration for the employee's promise" "when an employer has made no specific promise") (citing *Advanced Copy Prods., Inc. v. Cool*, 363 N.E.2d 1070, 1071 (Ind. 1977)); *Penn v. Ryan's Family Steakhouses*, 269 F.3d 753, 759 (7th Cir. 2001) (case cited by Moreno holding that under Indiana law, arbitration provision failed, in part, for lack of any

mutual promise to arbitrate); *Druco Restaurants Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 784 (7th Cir. 2014) (same); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (case cited by Moreno collecting cases interpreting other states' laws to hold that non-mutual modification provisions render an arbitration agreement illusory).

Moreover, even if consideration in the form of a mutual promise to arbitrate by Progistics were required under Illinois law, the Court would find that requirement satisfied here. The "Arbitration Policy" section of the 2015 Illinois Handbook (Section 1.5) expressly provides for "consideration" in the form of Progistics's mutual "promise to arbitrate all employment-related disputes." R. 22-3 at 6. This "Arbitration Policy" section is separate and distinct from the disclaimers in Section 1.2, with its own bolded heading. *Id.*

Numerous courts have found that where, like here, the arbitration provision in an employee handbook is separate and distinct from non-binding and non-mutual-modification disclaimers, the disclaimers do not negate the promises made in the arbitration provision, including the employer's mutual promise to arbitrate. *See, e.g.*, *Diggs*, 2013 WL 5737306, at *2-3 (rejecting argument that "language in the Employee Handbook that reserved the employer's right to revise or rescind its policies and expressly disclaimed the Handbook's construction as a contract" meant separate arbitration provisions in the handbook are "unenforceable for lack of mutuality" under Illinois law where promises to arbitrate were mutual and supported by consideration); *Mohammed v. Uber Tech., Inc.*, 2018 WL 1184733, at *7 (N.D. Ill. Mar.

7, 2018) (rejecting argument that non-mutual-modification disclaimer rendered separate arbitration clause illusory under Illinois law); *Isaacs v. OCE Bus. Serv. Inc.*, 968 F. Supp. 2d 564, 571 (S.D.N.Y. 2013) (arbitration agreement formed under New York law where handbook's arbitration provision was "mandatory" and "distinguishable from any non-binding or non-mutual sections of the handbook"); *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 77-78 (S.D.N.Y. 2015) (same); *see also Melena*, 847 N.E.2d at 103, 109 (although not directly addressing the disclaimers, finding agreement to arbitrate under Illinois law notwithstanding general non-mutual-modification and non-binding disclaimers); *Michalski*, 177 F.3d at 636, 638 (even though "the particular sheet that the employee signed did not state that the employer would be bound by arbitration" and supporting materials made clear "that [the employer] remain[ed] free to alter the terms and conditions of the arbitration program," finding that "employer's commitment to arbitrate" in employee handbook to be enforceable and to constitute consideration under Wisconsin law).

In sum, like Judge Pallmeyer in *Diggs*, this Court finds that general, prefatory disclaimers in an employee handbook do "not preclude a ruling compelling the employee to arbitrate" as long as there is adequate consideration in exchange for the employee's promise to arbitrate. *See* 2013 WL 5737306, at *2. Here, as in *Diggs*, there is adequate consideration under Illinois law both in the form of Moreno's continued employment and Progistics's mutual, enforceable promise to arbitrate. *See id.* at 2-3.

### B.     Vagueness and Unconscionability

Moreno next argues that the arbitration provisions in the Acknowledgement and Handbook are vague and unconscionable because they do not describe in sufficient detail the arbitration process. R. 22 at 8-9. In support of her vagueness arguments, Moreno primarily relies on *Penn*, 269 F.3d at 759, and *Druco*, 765 F.3d 776. These cases stand for the proposition that "[a]n agreement allowing a company to reserve the right to institute (or not institute, at its sole discretion) 'at any time a system of nonbinding arbitration,' without setting forth any of the key terms and conditions for the arbitration system is simply too vague and indefinite to be enforceable under Indiana law." *See Druco*, 765 F.3d at 784; *see also Penn*, 269 F.3d at 759 (agreement allowed the vendor to fulfill its promise by providing the parties with a "coin toss").

Unlike in *Druco* and *Penn*, the arbitration provisions here do not allow Progistics to institute a nonbinding arbitration policy at any time. Nor do they make Progistics's performance entirely optional, without any terms and conditions. Rather, they state that Progistics has implemented a "binding" and "mandatory" arbitration policy, that Progistics is also bound, and that arbitration will be performed "in a neutral, mutually agreeable forum according to the applicable minimum standards for arbitration." R. 19-1 at 5, 8.

In addition, both *Druco* and *Penn* interpreted Indiana law. Under Illinois law, the Seventh Circuit has consistently rejected arguments that detail-free arbitration clauses are fatally vague. This is true even where those clauses do "not provide such

13

implementing details as who the arbitrators would be, where arbitration would take place, and what procedures would govern" because the district court could "direct enforcement of the clause" through the FAA "without resort to speculation and without writing a clause for the parties." *Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 715-16 (7th Cir. 1987) (clause stating "ALL DISPUTES UNDER THIS TRANSACTION SHALL BE ARBITRATED IN THE USUAL MANNER" not fatally vague); *see also Green v. U.S. Cash Advance Ill. LLC*, 724 F.3d 787, 792-93 (7th Cir. 2013) (holding that where "parties selected private dispute resolution," "[c]ourts should not use uncertainty in just how that would be accomplished to defeat the evident choice," and collecting cases for the proposition that courts can use Section 5 of the FAA to "supply the particulars" with respect to "detail-free arbitration clauses"). The provisions to which Moreno agreed here are more detailed and more precise than the clauses found sufficient under Illinois law in *Schulze* and *Green*. *See* R. 22-3 at 6 ("you agree that any and all controversies, claims, or disputes . . . whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from your employment with Progistics Distribution, or the termination of your employment with the company, including any breach of this agreement, shall be subject to binding arbitration . . . in a neutral, mutually agreeable forum according to the applicable minimum standards for arbitration").

The same principles also distinguish *Caire v. Confer Value Based Care, LLC*, 982 F. Supp. 2d 582 (D. Md. 2013), on which Moreno relies in support of her unconscionability argument. *Caire* interpreted Maryland law, which does not allow

for detail-free arbitration clauses, and instead requires such clauses to provide a "mechanism for selecting a neutral arbitrator" and "rules by which the arbitration will proceed." *See id.* at 595. In addition, the *Caire* court's unconscionability finding depended in part on the fact that "Defendants made clear they would only arbitrate on terms they deemed favorable" and refused to "arbitrate before the AAA." *Id.* Here, by contrast, Progistics offered to submit the dispute to the AAA under the AAA's Employment Arbitration Rules and offered to pay filing and other arbitration fees. R. 19-2 ¶ 12.

For these reasons, the Court rejects Moreno's arguments that the arbitration provisions are unenforceably vague or unconscionable based on lack of specificity.

### C.    Effect of the March 2018 Handbook

Moreno further argues that there is no agreement to arbitrate because the 2018 Handbook superseded the 2015 Illinois Handbook. The March 2018 handbook does not contain an arbitration provision, and it states that "all previously issued Employee Handbooks and any inconsistent policy statements or memoranda are superseded." R. 22-2 at 9. As Smith explains in her declaration, "[a]t the time of the issuance of the 2018 Progistics Distribution Employee Handbook on March 2, 2018, Progistics no longer included reference to its arbitration program in its employee handbooks. However, Progistics maintained its pre-existing arbitration program with its employees and continued to enter into arbitration agreements with its employees separate from that handbook." R. 24-1 ¶ 2. Moreno resigned only two weeks after 2018 Handbook was issued.

Although the 2018 Handbook clearly states that it was superseding all *prior handbooks*, the Court does not find evidence that the March 2018 Handbook either modified or repudiated the *parties' arbitration agreement.* "A valid modification" of a contract under Illinois law "requires an offer, acceptance, and consideration." *Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 364 (7th Cir. 1994). The Seventh Circuit in *Robinson* held that a "valid modification" of an employment contract did not occur simply because the employer "unilaterally issued" a new employee manual. *Id.* Courts have also held that even after the termination of an employment contract, "an Arbitration Policy" "survive[s] . . . unless there is clear evidence that the parties intended" otherwise. *Shipp v. XA, Inc.*, 2006 WL 2583720, at *7 (N.D. Ill. Aug. 31, 2006) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union,* 430 U.S. 243, 255 (1977) ("where the disputes is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication")); *see also Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889 (N.D. Ill. 2014) (collecting cases). "Th[e] presumption in favor of arbitrabilty can be rebutted if the parties express or clearly imply an intent to repudiate arbitrability." *Shipp*, 2006 WL 2583720, at *7

Here, there is no evidence of either: (a) acceptance and consideration of a modification invalidating the parties' arbitration agreement; (b) a clear intent to repudiate that agreement. The 2018 Handbook does not mention arbitrability at all, much less express an intent to modify or repudiate arbitrability. *See* R. 22-2. And Moreno never signed any superseding document that addressed arbitration. All the

2018 Handbook did was supersede the 2015 Illinois Handbook, which was not a contract anyway pursuant to the non-binding disclaimer. *See* R. 22-3 at 5 ("This Employee Handbook is not a binding contract between the Company and its employees.") [2] The Court therefore rejects Moreno's argument that the 2018 Handbook modifies, repudiates, or otherwise invalidates the parties' arbitration agreement. *See, e.g.*, *Milnes v. Aimco/Bethesda Holdings, Inc.*, 805 F. Supp. 2d 525, 527-28 (N.D. Ill. 2011) ("[t]he court finds that defendant's act of removing the arbitration policy from the handbook had no effect on the continued validity of the arbitration agreement" absent evidence of "mutual consent") (citing *Robinson*, 19 F.3d at 364).

### D. Alleged Fact Disputes

Moreno finally argues that genuine issues of material fact preclude the Court from compelling arbitration and staying proceedings. For starters, Moreno attempts to cast doubt as to whether Moreno's Acknowledgment in fact corresponds with the 2015 Illinois Handbook. She suggests that it may instead correspond with the 2016 California Handbook. In support, she relies on Christian Moreno's declaration stating that he was told that Illinois employees should rely on the 2016 California Handbook, which does not contain an arbitration policy. R. 22-4 ¶ 2. Moreno further points out that the Acknowledgement and the 2016 California Handbook describe Progistics as

---

[2]     As set forth above, the parties formed an arbitration agreement notwithstanding the non-binding disclaimer based on the promises made in the signed Acknowledgment, which are supported by consideration in the form of Moreno's continued employment and Progistics's mutual promise in a distinct and separate provision of the 2015 Illinois Handbook.

"Progistics Distribution, Inc.," whereas the October 2015 Employee Handbook describes Progistics as "Progistics Distribution (the 'Company')." R. 22 at 13.

The Court does not find a genuine issue of material fact as to whether the Acknowledgment in fact corresponds with the 2016 California Handbook. Smith states in her affidavits that the 2015 Illinois Handbook "was in effect at the location where Plaintiff and Christian Moreno were employed," and that this Handbook—not the 2016 California Handbook—would have been given to Moreno at the start of her employment. R. 19-1 ¶¶ 4-5; R. 24-1 ¶¶ 2-4. This testimony is corroborated by the fact that the 2016 California Handbook plainly states on the first page that it is for "California locations only." R. 22-5 at 2. By contrast, the October 2015 Handbook plainly states on the first page that it is for "Illinois." R. 22-3 at 2. Additionally, the Acknowledgment Moreno signed matches the Acknowledgment at the end of the 2015 Illinois Handbook in the example attached to Smith's declaration. *Compare* R. 19-1 at 4-6 *with* R. 19-1 at 8. And, as Smith explains, "[a]fter Progistics entered into a relationship with Avitus Group, which was after the issuance of the October 1, 2015 Employee Handbook . . . , any employee handbooks issued in conjunction with Avitus Group"—including the 2016 California Handbook that says "Prepared by Avitus Group" on the first page (R. 22-5 at 2)—"contained an acknowledgement of receipt form that was different from the Employee Acknowledgment of Receipt signed by Plaintiff." R. 24-1 ¶ 6.

Moreno's purportedly contrary facts amount to mere speculation and conjecture. Significantly, she herself never asserts that she received a copy of the

2016 California Handbook. She instead relies on a hearsay statement by Christian Moreno about what a general manager—who is employed by a different entity and therefore is subject to a different handbook (R. 24-1 ¶ 4)—told him. Nor does the Court find it significant that at one place in the Acknowledgment, Progistic Distribution's name appears with an "Inc." on the end, as it does in the 2016 California Handbook. At another place in the Acknowledgment—at the top—it names "Progistics Distribution" without an "Inc." like the 2015 Illinois Handbook does. R. 19-1 at 8.[3] None of Moreno's speculation creates a genuine issue of material fact as to whether the Acknowledgment she signed at the start of her employment in Illinois corresponds with the 2016 California Handbook.

This leaves Moreno's claim that she never received the 2015 Illinois Handbook. With respect to this issue, Moreno's affidavit may very well create a genuine issue of material fact as to whether she received the Handbook alongside the Acknowledgment. But this Court agrees with Progistics that the Seventh Circuit's opinion in *Janiga* forecloses Moreno's argument that any such factual dispute precludes compelling arbitration.

In *Janiga*, the Seventh Circuit described the evolution of Supreme Court case law on the "perennial question in cases involving arbitration clauses" regarding "[t]he division of labor between courts and arbitrators." 615 F.3d at 741. The *Janiga* court

---

[3]     Moreno also points out that the second paragraph of the Acknowledgement refers to "the Employment Relationship provisions of the Handbook." R. 19-1 at 6. Moreno notes that the Table of Contents of the 2015 Illinois Handbook does not contain the title "Employment Relationship." R. 22-3. But neither does the 2016 California Handbook. R. 22-5.

summarized that "challenges to the validity of the arbitration agreement" and disputes concerning "contract formation" are for courts to decide. *Id.* at 741-42. But once the court has decided that a valid arbitration agreement was formed, challenges to whether the "contract is enforceable" fall "squarely in the arbitrator's box." *Id.* at 743. Applying these principles to the facts of the case at hand, the *Janiga* court reasoned that because the plaintiff had signed an agreement forming a valid arbitration agreement, questions including whether the plaintiff "g[ot] a copy of the contract" went to whether the contract was enforceable, which fell within the arbitrator's domain. *Id.* at 742-43.

Like in *Janiga*, "the problem" with Moreno's argument that she never got a copy of the 2015 Illinois Handbook "is that [s]he signed [the Acknowledgment], and that [the Acknowledgment] [s]he signed refers to arbitration." *Id.* at 743. Moreno's "signature—which [s]he admits was given voluntarily—objectively demonstrated h[er] assent to the contract." *Id.*; *see* R. 22 at 11 (conceding that "Moreno signed the Acknowledgment of Receipt"). "Even if [the Court] limit[s] [its] review to the one page that [Moreno] signed, it is impossible to avoid the conclusion that [s]he agreed to arbitration." *Janiga*, 615 F.3d at 743; *compare id.* ("directly above his signature is the following statement, in all capital letters: 'I/WE HAVE READ AND UNDERSTOOD THE PRE–DISPUTE ARBITRATION AGREEMENT CONTAINED ON PAGE 4, PARAGRAPH 9 OF THE CLIENT AGREEMENT AND HAVE RECEIVED A COPY THEREOF.'") *with* R. 19-1 at 8 ("This is to acknowledge that I have received a copy of the Employee Handbook. . . . I understand and agree that I am bound by the

provisions of the Handbook, particularly the provision relating to the mandatory, binding arbitration of any employment related dispute."). Moreno "acknowledged by h[er] signature that [s]he read, understood, and received a copy of the arbitration agreement, and this clause [in the Acknowledgment] (distinct from the arbitration clause itself) says that disputes would be subject to arbitration." *See Janiga*, 615 F.3d at 743; *see also, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("Generally, a party who signs a written contract is presumed to have notice of all of the contract's terms.") (citing *Janiga,* 615 F.3d at 743). As in *Janiga*, "the only issue for the [C]ourt" at this stage is "whether a contract was formed," and for all the reasons set forth above, "it was." *See Janiga*, 615 F.3d at 743.

*     *     *

In sum, there is a "written agreement to arbitrate" between Moreno and Progistics, the first requirement that must be met for the Court to compel arbitration under the FAA. *Zurich Am.*, 417 F.3d at 687.

## II.     Scope of Agreement and Refusal to Arbitrate

There is no dispute in this case as to the second and third factors that must be met for the Court to compel arbitration: "a dispute within the scope of the arbitration agreement" and a "refusal to arbitrate." *See id*. With respect to the second factor, this case plainly falls within the scope of the arbitration provision. Moreno is suing Progistics in a collective action for discrimination in pay based on gender and failure to pay overtime wages. R. 1. The arbitration provision within the 2015 Illinois Handbook states "any and all controversies, claims, or disputes with anyone whether

brought on an individual, group, or class basis, arising out of, relating to, or resulting from your employment with Progistics Distribution . . . shall be subject to binding arbitration." R. 19-1 at 5. And the Acknowledgment states that Moreno agrees to "mandatory, binding arbitration of any employment related dispute." R. 19-1 at 8. Moreno's collective action lawsuit is directly related to her employment with Progistics. With respect to the third factor, Moreno's opposition to Progistics's motion to compel, as well as the facts in Progistics's counsel's declaration filed in support of Progistics's motion to compel (R. 19-2), establish Moreno's refusal to arbitrate.

"[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 561 (7th Cir. 2008); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration"). The Court therefore stays this case pending arbitration.

## Conclusion

For the above reasons, this Court grants Progistics's motion to compel arbitration and stay proceedings (R. 19). The parties should provide the Court with a written status report on or before October 31, 2018 advising the Court as to the status of arbitration proceedings. A status hearing is set for November 2, 2018.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: August 2, 2018